**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JAFX, LTD. aka JAFX, EOOD,<br><br>Defendant. | CIVIL ACTION NO.: 2:18-cv-00598<br><br>CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST JAFX, LTD. aka JAFX, EOOD |

## I.  INTRODUCTION

On July 27, 2018, Plaintiff Commodity Futures Trading Commission (the "Commission" or "CFTC") filed a Complaint against Defendant JAFX, LTD aka JAFX, EOOD ("JAFX" or "Defendant") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–27f (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2018).  Specifically, the Complaint charged JAFX with operating as an unregistered foreign exchange dealer in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2018), and failing to provide customers with the required Risk Disclosure Statement in violation of Regulation 5.5, 17 C.F.R. § 5.5 (2018).

## II.     CONSENTS AND AGREEMENTS

To effect partial settlement of the matters alleged in the Complaint against Defendant JAFX without a trial on the merits or any further judicial proceedings, Defendant JAFX:

1. Consent**s** to the entry of this Consent Order of Permanent Injunction and Other Relief Against JAFX, LTD. aka JAFX, EOOD. ("Consent Order");

2. Affirms that it has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5. Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7. Waives**:**

   (a) Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2018), relating to, or arising from, this action;

   (b) Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C.

§ 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this Consent Order;

8. Consents to the continued jurisdiction of this Court over it for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action, even if JAFX now or in the future resides outside the jurisdiction of this Court;

9. Agrees that it will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10. Agrees that neither it nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect its: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party. JAFX shall comply with this agreement, and shall undertake all steps necessary to ensure that all of its agents and/or employees under its authority or control understand and comply with this agreement; and

11. Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which it admits;

12. Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

13. Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than (a) a statutory disqualification proceeding; (b) a proceeding in bankruptcy, or receivership; or (c) a proceeding to enforce the terms of this Order;

14. Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 56 of Part V of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against it, whether inside or outside the United States;

15. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against JAFX in any other proceeding;

16. Consents to pay restitution, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court;

17. Consents to pay disgorgement, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court; and

18. Consents to pay a civil monetary penalty, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

19. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    Findings of Fact**

    **1.    The Parties to this Consent Order**

20. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1-27f (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2018).

21. Defendant **JAFX, Ltd. aka JAFX EOOD**, is a Bulgarian company licensed to do business in St. Vincent and the Grenadines. It uses as a business address, The Financial Services Centre, Stoney Ground, Kingstown, St. Vincent and the Grenadines, and also purports to have a business address in Bulgaria at Sofia 1463, Triaditsa District, Prestige Business Center, 49 Patriarch Evtimii, 4th floor, Bulgaria. JAFX has never been registered with the Commission in any capacity.

    **2.    JAFX Acted as an Unregistered Retail Foreign Exchange Dealer**

22.     Beginning in at least September 2015 and continuing to the present (the "relevant period"), JAFX, an offshore company claiming to operate from St. Vincent and the Grenadines and Bulgaria, using the website *http://www.JAFX.com* ("website") and videos on *http://www.YouTube.com* ("YouTube"), is, or has offered to be, the counterparty to leveraged, retail foreign currency ("forex") transactions for customers located in the United States who are not Eligible Contract Participants ("ECPs"), without being registered with the Commission as a retail foreign exchange dealer ("RFED"), in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2018).

23.     Throughout the relevant period, each time JAFX opened an account for a retail forex customer to engage in retail forex transactions, it failed to provide each retail forex customer with a written "Risk Disclosure Statement," in violation of Regulation 5.5, 17 C.F.R. § 5.5 (2018).  Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa) (2012), prohibits any person, unless registered with the Commission in such capacity as the Commission by rule, regulation, or order shall determine, from soliciting and accepting from retail customers orders for transactions in forex offered on a leveraged or margined basis that do not result in actual delivery and do not create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery.

24.     The Act defines an ECP, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  Section 1a(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi) (2012).  Individuals who

6

do not meet these criteria are non-ECPs. JAFX's customers are typically non-ECPs – *i.e.*, retail customers.

25. The Regulations define an RFED, in relevant part, as any person that is, or offers to be, the counterparty to a retail forex transaction. Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2018).

26. The Regulations define a retail forex transaction as any account, agreement, contract or transaction described in Section 2(c)(2)(B) or 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(B) or 2(c)(2)(C) (2012), Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2018). A retail forex transaction does not include an account, agreement, contract or transaction in forex that is a contract of sale of a commodity for future delivery (or an option thereon) that is executed, traded on or otherwise subject to the rules of a contract market designated pursuant to Section 5(a) of the Act, 7 U.S.C. § 5(a) (2012). *Id.*

### 3. **JAFX's Operations**

27. JAFX solicits orders from U.S. customers who are non-ECPs to open leveraged, retail forex trading accounts through JAFX's website as well as videos on YouTube, where JAFX is, or offers to be, the counterparty to each leveraged, retail forex transaction. Customers are directed to open trading accounts by submitting an online account application through JAFX's website. JAFX encourages customers to access and trade their accounts via a mobile application ("app"), stating on the JAFX website: "Clients are able to access all trading tools on the go with our iOS/Android mobile trading app. Trade anywhere and anytime." While the website contains language noting that the solicitations are "not directed at U.S. customers," there is nothing in the online account application stating JAFX does not accept U.S. customers, nor are U.S. customers prevented from opening accounts. The application process contains a drop-down

menu of companies from which JAFX accepts customers; the first country listed is the "United States." U.S. customers may open an account with JAFX with as little as $100 USD.

28. JAFX's online account application does not seek any information about prospective customers' ability to send or receive actual delivery of forex or customers' business need for forex. JAFX's online account application does not inquire as to whether a prospective customer is an ECP or about a prospective customer's savings and investments. The online account application does not inquire if a prospective customer has assets in excess of $5 million, nor does it inquire if the prospective customer is seeking to trade forex to manage the risk of an asset or liability already owned, or about to be owned, by the prospective customer.

29. During the relevant period, JAFX solicits and accepts funds and orders from non-ECP, U.S. resident customers to trade leveraged forex contracts, for which JAFX acts as the counterparty to each retail forex transaction. While JAFX's website states, in part: "All information on this website is not directed towards soliciting citizens or residents of the United States and the United Kingdom," this is nothing more than a poor attempt to evade U.S. regulatory requirements. That JAFX actively seeks U.S. customers is demonstrated by other aspects of its website which provides a "U.S. toll free number," and the fact that it has accepted thousands of applications from U.S. customers. In addition, the "frequently asked questions" or FAQ section of the website does not list the U.S. under the section titled "What countries are restricted from using JAFX."

30. Further, nowhere on JAFX's online application does it solicit information concerning whether prospective customers are ECPs and it fails to inquire whether a prospective customer has the ability or the business need to accept foreign currency into his or her bank account. In the FAQ portion its website, JAFX advises customers:

> Once your documents are fully verified it is time to fund your landing account. A JAFX landing account is where you can store funds before you distribute them into your trading accounts. Funds in the landing account cannot be traded unless you move them to a trading account.

31. JAFX permits U.S. and international customers to fund forex trading accounts using wire transfer, Skrill, credit/debit cards, and/or Bitcoin. To create a trading account, prospective customers are directed to "click on the 'My Accounts' tab in the JAFX Portal and click on 'Add USD Account.'" Moreover, the default setting for JAFX's funding trading accounts is United States dollars ("USD").

32. Once a customer has funded a trading account, JAFX allows customers to link their trading account to as many accounts traded by third-party account managers as the customer desires:

> Once you have successfully deposited into your 'Landing Account' you will eligible to create as many managed accounts as you wish. A JAFX managed account will give you the ability to follow JAFX Third Parties. You will need to create a separate Managed Account for each EA or third party that you wish to follow giving you the ability to spread your funds across programs.

33. JAFX's online account application does not require that the customer state whether or not the customer has the ability to deliver and accept delivery in connection with the customer's lines of business, which is one of the prerequisites to qualify as an ECP. In fact, with leveraged, retail forex accounts being offered for as little as $100 USD, JAFX is specifically soliciting customers that typically could never qualify as ECPs.

34. JAFX neither advises actual and prospective U.S. customers in its solicitations that JAFX is required to be registered with the Commission as an RFED, nor does JAFX advise actual and prospective customers that it is acting unlawfully by operating as a RFED in the U.S. without such registration. In the FAQ section of the website, JAFX appears to acknowledge its unlawful conduct by stating: "JAFX is currently not regulated. Regulation takes a very long

9

time to setup and we are in the process of applying for regulation." As of the date of the filing of this Complaint, JAFX has not filed for registration with the Commission.

35. JAFX determines the maximum and minimum trade size for all trades it offers to customers, and determines the amount of leverage it offers customers. JAFX advises its customers in the FAQ section of its website that: "The minimum trade size is 0.01 Lot" and "The maximum trade size of (sic) 1,000 Lots." JAFX further advises customers under the FAQ section of its website titled, "What is the maximum leverage JAFX offers?," that the maximum leverage JAFX offers clients is 1:500. This means that a customer can increase its trading position by buying or selling up to 500 times the amount of funds the customer invested. Thus, for example, a JAFX customer may trade up to $500,000 notional value in foreign currencies with a $1,000 deposit, and a customer with $10,000 invested may trade up to $5,000,000 in foreign currencies. This high degree of leverage means that even a small price movement can produce large losses in relation to the customer's initial deposit and can result in customers rapidly losing their funds and being unable to ever recover from a losing trade.

36. JAFX's forex contracts neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts are ultimately offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

37. Each of the retail forex transactions offered by JAFX are the type of accounts, agreements, contracts or transactions described in Section 2(c)(2)(B) or 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(B) or 2(c)(2)(C) (2012). None of the transactions in forex offered by JAFX is a contract of sale of a commodity for future delivery (or an option thereon) that is executed, traded

on or otherwise subject to the rules of a contract market designated pursuant to Section 5(a) of the Act, 7 U.S.C. § 5(a) (2012). Therefore, each transaction offered by JAFX is a retail forex transaction.

38. JAFX's "terms and conditions," which are set forth in its website, further confirms that JAFX agrees to act as an RFED by agreeing to "provide services to Customer in connection with the purchase and sale of over-the counter margin based [forex] trading contracts" and by noting that "Customer hereby acknowledges and agrees that JAFX may act as the counterparty to Customer for any trade entered for the undersigned's Account." Thus, JAFX is an RFED, and has been acting as an RFED, because it is, and has offered to be, the counterparty to U.S. customers' retail forex transactions.

39. JAFX is not exempt from the requirement to register with the Commission as an RFED. At no time during the relevant period has JAFX been exempt from the requirement to register with the Commission as an RFED.

### 4. JAFX Fails to Provide Mandatory Disclosure Statement to Retail Forex Customers

40. Regulation 5.5, 17 C.F.R. § 5.5 (2018), prohibits RFEDs from opening any forex account for a retail customer unless the RFED first provides the customer with a written disclosure statement that includes the following information:

> (a) for each of the most recent four calendar quarters during which the counterparty maintained retail forex acounts:
>
> (i) the total number of non- discretionary retail forex customer accounts maintained by the retail foreign exchange dealer;
>
> (ii) the percentage of accounts that were profitable during the quarter; and
>
> (iii) the percentage of such accounts that were not profitable during the quarter.

    (b)    a Risk Disclosure Statement warning of the financial losses that can inccur using leverage, conflicts of interests and other risks.  Specifically, RFEDs must disclose in writing, in all capital letters, that:

        (i)    the RFED's trading is not on a regulated market or exchange and customers' funds have no regulatory protection;

        (ii)    because of leverage and other risks, customers can rapidly lose all of their funds;

        (iii)    the RFED, if serving as the counterparty, has a direct financial conflict of interest with the customer because when the customer loses money trading, the counterparty dealer is making money on such trades;

        (iv)    the RFED may commingle customers' funds with its own operating funds or use them for other purposes; and

        (v)    in the event that the RFED becomes bankrupt, funds the dealer is holding for customers, in addition to funds owed to customers whether or not any assets are maintained in separate deposit accounts by the dealer, may be treated as an unsecured creditor's claim.

41.    Regulation 5.5, 17 C.F.R. § 5.5 (2018), also requires that the RFED receives back from the retail forex customer a signed and dated acknowledgement that the customer received and understood the disclosure statement.

42.    At no time during the relevant period has JAFX provided this disclosure statement to any of its U.S. retail forex customers.

**B.**    **Conclusions of Law**

    <u>**Jurisdiction and Venue**</u>

43.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper district court of the United States against such person to

enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

44. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the acts and practices in violation of the Act and Regulations occurred within this District.

### Acting as Unregistered RFED

45. By the conduct described in paragraphs 1 through 42 above, JAFX solicited or accepted orders from U.S. resident non-ECPs in connection with leveraged or margined forex transactions and is or offers to be the counterparty to the forex transactions. JAFX engages in this conduct without being registered as an RFED. By this conduct, JAFX is, and has been throughout the relevant period, violating Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2018).

### Failure to Provide Required Disclosure Statement

46. By the conduct describe in paragraphs 1 through 42 above, specifically by opening retail forex trading accounts throughout the relevant period for U.S. retail customers without providing customers a written disclosure statement with the disclosures set-forth in Regulation 5.5, 17 C.F.R. § 5.5 (2018), JAFX violated Regulation 5.5, 17 C.F.R. § 5.5 (2018), each time it opened a retail forex trading account for U.S. retail customers during the relevant period.

47. Unless restrained and enjoined by this Court, there is a reasonable likelihood that JAFX will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.     PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

48.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), JAFX is permanently restrained, enjoined and prohibited from directly or indirectly:

- a.     soliciting or accepting orders from U.S. resident non-ECPs in connection with leveraged or margined forex transactions and acting as or offering to be the counterparty to the forex transactions, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2018); and

- b.     opening retail forex trading accounts for U.S. resident retail customers without providing customers a written disclosure statement with the disclosures set forth in Regulation 5.5, 17 C.F.R. § 5.5 (2018).

49.     Defendant JAFX is also permanently restrained, enjoined and prohibited from directly or indirectly:

- a.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

- b.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018), for its own personal account or for any account in which it has a direct or indirect interest;

- c.     Having any commodity interests traded on its behalf;

- d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

  e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

  f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or

  g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38), 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2018).

## V. STATUTORY AND EQUITABLE RELIEF

50. **JAFX** shall pay disgorgement, plus post-judgment interest, to the CFTC.

51. **JAFX** shall pay a civil monetary penalty, plus post-judgment interest, to the CFTC.

52. The Court shall determine the amounts of disgorgement and civil monetary penalty and the procedures for payment and distribution of these monetary sanctions by further order upon: motion of the parties submitting to the Court a proposed consent order setting out their agreement on the amounts of restitution, disgorgement and civil monetary penalty to be paid by JAFX in this matter; subsequent motion by the CFTC; and/or hearing before this Court.

53. In connection with any CFTC motion for disgorgement and/or civil monetary penalties, and at any hearing held on such a motion: (a) JAFX will be precluded from arguing that it did not violate the federal laws as alleged in the Complaint; (b) JAFX may not challenge

the validity of its consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, witness testimony, and/or documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the CFTC's motion for disgorgement and civil monetary penalties, the parties may take discovery, including discovery from appropriate non-parties.

54. JAFX shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in this action, and in any current or future Commission investigation or related thereto subject matter of this action.  As part of such cooperation, JAFX shall comply, to the full extent of its abilities, promptly and truthfully with any inquiries or requests for information including but not limited to, requests for production of documents and authentication of documents, shall provide assistance at any trial, proceeding, or investigation related to the subject matter of this action, including but not limited to, requests for testimony, depositions, and/or interviews.  Should the CFTC file any additional action(s) related to the subject matter of this action, JAFX's corporate officer is directed to appear in the judicial district in which such action(s) is pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should such testimony be necessary.

55. JAFX shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action.

## VI. MISCELLANEOUS PROVISIONS

56. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

> Deputy Director Paul Hayeck
> Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, DC 20581
> (202) 418-5312
> phayeck@cftc.gov

Notice to Defendant JAFX, LTD aka JAFX, EOOD:

> Jan Harm Snyman
> Director and Beneficial Owner of JAFX, LTD aka JAFX, EOOD
> Plot 92
> Silkaatsnek, Brits, South Africa 0250

All such notices to the CFTC shall reference the name and docket number of this action.

57. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

58. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

59. Waiver: The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this

Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

60. **Waiver of Service, and Acknowledgement:** JAFX waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to JAFX of its terms and conditions. JAFX further agrees to provide counsel for the CFTC, within thirty days after this Consent Order is filed with the Clerk of Court, with an affidavit or declaration stating that JAFX has received and read a copy of this Consent Order.

61. **Continuing Jurisdiction of this Court:** This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for all other purposes relevant to this action, including any motion by JAFX to modify or for relief from the terms of this Consent Order.

62. **Injunctive and Equitable Relief Provisions:** The injunctive and equitable relief provisions of this Consent Order shall be binding upon JAFX, upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with JAFX.

63. Authority: Jan Harm Snyman hereby warrants that he is the Director and Beneficial Owner of JAFX, and that this Consent Order has been duly authorized by JAFX and he has been duly empowered to sign and submit this Consent Order on behalf of JAFX.

64. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

65. JAFX understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings it may not challenge the validity of this Consent Order.

66. Agreements and Undertakings: JAFX shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order of Permanent Injunction and Other Statutory and Equitable Relief Against JAFX, LTD aka JAFX, EOOD*.

**IT IS SO ORDERED** on this   1   day of    February    , 2019.

_____
**UNITED STATES DISTRICT JUDGE**